Bernard S. Meyer, J.
In this trust proceeding the trustees under deed of trust made by Nellie Hoyt McNeel petition for settlement of their supplemental account and discharge with respect thereto, approval of their allocation of stock dividends and of their intended distribution of same, allowance of commissions and of counsel fees, and instructions with respect to a requested invasion of principal. As to counsel fee the judgment to be entered hereon will make provision therefor, provided the judgment is settled on five days’ notice and that an affidavit of services accompanies notice of settlement when served. As to the supplemental account, the dividend allocation and distribution and the commissions claimed, there is no opposition and judgment approving them will be entered.
With respect to the invasion of principal which has been requested by settlor’s daughter, Hoyt Greenville McNeel, the trustees ask whether in determining the necessity for and amount of invasion they must take into account Miss McNeel’s income from all sources or only from the trust or whether they should consider stock dividends distributed to her, and, further, whether the power of invasion may be exercised to restore depletion of Miss McNeel’s capital assets or must be confined to deficiencies in net income after taxes for her support and maintenance. The deed of trust provided for payment of income in the sole discretion of the trustees to any or all of the settlor, Miss McNeel, John G. McNeel or Lilly Herring and Harvard University and the Salvation Army, with remainder to Harvard and the Salvation Army. It also empowered the trustees to invade principal for the benefit of the settlor, Miss McNeel or John G. McNeel “if said Trustees shall deem it necessary or desirable for any reason to do so.” John G. McNeel and Lilly Herring predeceased the settlor. When the trust was created settlor and Miss McNeel resided in England. *245 Settlor continued to reside there until her death and Miss MeNeel still resides there.
On settlor’s death her estate was administered in New York County. Since British death duties were greater than the value of settlor’s British assets, the executor asked and received permission to abandon the British assets (Matter of McNeel, 10 Misc 2d 359). In accordance with settlor’s will the estate remainder was distributed to the trustees under the deed of trust here in issue. Thereafter on May 22, 1959 a decree was made by this court settling the trustees’ accounts and adjudging that they were: 1 ‘ under no duty or responsibility to transmit any assets of the trust estate to Great Britain to discharge any British death duties that may be owing to the British government by reason of the death of Nellie Hoyt MeNeel, and said Trustees be and they hereby are ordered and directed to refrain from employing any assets of the trust estate located in this State toward the discharge or satisfaction of said British taxes ” and directing them: “ to abandon any and all right, title and interest in or to all real or personal property of any kind whatsoever located in Great Britain constituting assets of Nellie Hoyt MeNeel, the deceased Grantor ”.
On March 2, 1960 under power of attorney given her at her request by the New York executor, Miss MeNeel was appointed ancillary administratrix of her mother’s estate in England. Thereafter she paid, in good faith and after negotiation with British tax authorities, British estate duty of 14,849 pounds out of her own personal funds and received the property in Great Britain which the New York executor and the trustees had abandoned. She has now requested the trustees to pay to her from the principal of the trust the sum of 10,000 pounds, stating that “ over a long period of time my income has been insufficient for my needs ”, that “ There have been many times when I have had to curtail expenditure considerably for entertaining of friends, for proper maintenance and repairs of my home and in other ways ” and that “ for many years I have not been able to maintain a standard of living comparable to that of my mother during her lifetime.” By stipulation the parties request the court also to determine whether the May 22, 1959 decree precludes the trustees from reimbursing Miss MeNeel, in whole or in part, for her payment of British estate duty upon her mother’s estate.
The answer of Harvard University alleges that the invasion clause permits invasion for any reason, and consents to the requested invasion. .The answer of the Salvation Army consents *246 to the invasion and alleges that Miss McNeePs reasons for the requested payment are such that invasion as she requests would not be an abuse of discretion. The Attorney-General’s answer alleges that refusal to invade because of the May 22, 1959 decree is within the discretion of the trustees. The court holds that the decree of May 22, 1959 does not preclude the requested invasion, that the trustees are authorized to invade upon a finding of desirability and are not obligated to find necessity, and that in determining whether the requested invasion is desirable they may, but are not required to, take into account Miss McNeePs other assets or income and may restore depletion of her capital assets if they deem it desirable to do so.
The power of invasion is phrased in the disjunctive. The trustees may therefore invade because they deem it “ desirable for any reason to do so ”, without regard to whether they find it necessary to do so. In Matter of Bisconti (306 N. Y. 442) the Court of Appeals construed the word “ otherwise ” in the phrase “whether because of insufficiency of income personal need or otherwise” to mean “for any other reason ”. Its conclusion (p. 445) “that the testatrix intended her trustees to handle the trust for her daughter just as they thought best ’ ’ is, therefore, appropriate to the instant case, even though there are other differences in the language of the clause construed in that case from the clause here involved. Bearing in mind that the clause here involved was to govern invasions requested by the .settlor as well as any invasion requested by Miss McNeel, the use of the disjunctive and of the phrase 1 ‘ desirable for any reason ’ ’, the court concludes that the discretion conferred upon the trustees herein is no less broad than that conferred on the Bisconti trustees. On that reasoning and on the authority of the Bisconti ease, the trustees are not required to consider Miss MeNeel’s other assets or income or whether the invasion will restore depletion of her capital. This is not to say that the trustees .may not consider those factors in exercising their discretion (Matter of Strauss, 73 N. Y. S. 2d 471; Matter of Jaeck, 42 N. Y. S. 2d 514; Matter of Gardner, N. Y. L. J., March 6, 1967, p. 21, col. 5) but simply that they will not be guilty of an abuse of discretion if they do not do so. The ultimate determination is, of course, for the trustees, not the court, to make (Matter of Shea, 234 App. Div. 176), but in view of the request for instructions the court notes that, in the final analysis the only limitation upon the exercise of the power by the trustees is that they act in good faith in determining that invasion is desirable (cf. Matter of Ahrens, 272 App. Div. 472, app. dsmd. 297 N. Y. 600; see Ann. 2 ALR. 2d 1383,1421). They *247 may and should in reaching their decision consider the standard of living of settlor and Miss McNeel during the settlor’s lifetime and of Miss McNeel since her mother’s death, the fact that as settlor’s daughter Miss McNeel was the primary object of settlor’s bounty and her issue, had she had any, the primary remaindermen, the fact that Miss McNeel had no issue and is the last income beneficiary remaining alive, Miss McNeel’s age and the benefit to her both in standard of living and peace of mind that may reasonably be expected to result, the appreciation of corpus that has occurred and the relation of the amount sought to be withdrawn to the total corpus. Moreover, the fact that both remaindermen have expressed agreement that the requested invasion would not constitute an abuse of discretion is not wholly without significance in the determination to be made, for, while it is true that an unauthorized diversion of a potential gift to a charitable organization is not validated by the consent of the organization (Matter of Lachat, 184 Misc. 486), the problem before the trustees concerns not an unauthorized diversion but a diversion which the settlor expressly authorized, provided only that the trustees find it desirable.
With respect to the effect of the May 22, 1959 decree, it is first to be noted that while Miss McNeel’s letter of request notes the decline in her own capital through ‘ ‘ heavy taxes and deficits in income ’ ’ it nowhere requests that principal be invaded for the purpose of repaying to her the British estate duty which she paid. Her purpose, rather, is the maintenance of her standard of living and the British estate duty question enters the equation only incidentally, via the stipulation, because the trustees rightly wish to be protected, if they grant the requested invasion, against a later contention that they were precluded by the May 22, 1959 decree from doing so. Clearly that decree does not preclude their so doing, for the only request before the court in 1959 was ‘1 for instructions with respect to the abandonment of assets * * * situated in Great Britain” (par. 5 of the Wherefore clause), the testimony of the individual trustee before the Referee concerned only abandonment, and the Referee’s opinion and conclusions of law both include the statement that: 1 i The court should instruct the petitioners not to transmit any moneys to Great Britain to pay and discharge the lien of the British Government against the so-called ‘ free estate ’ and not to take any action or proceedings to reduce the foreign assets to possession; and the petitioners should be instructed and authorized to abandon such foreign property.” Except for a passing reference in the recital of facts of the Referee’s opinion, the power of invasion was neither discussed *248 nor considered and no request for invasion of principal for any purpose was before the court.
The decree of May 22, 1959 is binding upon the parties then before the court only in terms of the issue then presented to the court (Rudd v. Cornell, 171 N. Y. 114, 128, 130; Bowditch v. Ayrault, 138 N. Y. 222, 231; see Matter of Hoyt, 160 N. Y. 607, 618; Meredith v. First Trust Co. of Albany, 260 App. Div. 517, app. dsmd. 285 N. Y. 619). Construction by the court of the settlor’s deed of trust was limited by the necessities of the accounting before the court (see Matter of Hurlbut, 51 Misc 263, 266). By no stretch of the imagination, therefore, can the direction of the May 22, 1959 decree against use of trust assets to pay British death duties be construed as anything more than a determination that it was consistent with the trustees ’ fiduciary obligation that such payment not be made. Whether that direction was within the scope of the 1959 proceeding or was simply a ploy for use in the then forthcoming negotiations with the British tax authorities is immaterial. The fact is that the then existing state of facts did not include a request for invasion of principal, and, therefore, the decree did not then and does not now bar an invasion of principal upon request of the beneficiary, even though the purpose of the invasion be to make direct payment of the British death duties.
The instant request, as is noted above, is not for the purpose of making direct payment of such duties. It is for the wholly different purpose of maintaining the beneficiary’s standard of living. In making that determination the trustees aré to consider only whether the invasion is “ desirable ” and would abuse their discretion if they refused to grant the requested invasion on the ground'that the May 22, 1959 decree precluded their so doing.