Samuel J. Silverman, S.
These are objections to a series of accountings of the trustees of trusts under the wills of Florence H. Davis and Benjamin B. Davis. There is a related inter vivos trust created by Florence H. Davis. Charlotte Lawrence, daughter of Florence Davis and Benjamin Davis, is the income beneficiary under all three trusts and the objecting party. Certain common issues underlie various categories of objections and the court will rule on those in this decision.
I. DEPRECIATION
Until 1963 essentially the sole asset of the Florence Davis testamentary trust was stock in 250 Hudson Street Corporation. Half the stock of this corporation was divided between the Florence Davis testamentary trust and the Florence Davis inter vivos trust. The remaining half of the stock was owned by John Davis, Charlotte’s brother.
From a period antedating the death of either testator, the corporation, in the calculation of its income for internal accounting and income tax purposes, and so far as appears for all other purposes, deducted straight line depreciation on the building at the rate of 2%% of the cost of the building, or *1068 $29,516 per annum. No fund was set aside representing this depreciation; it was merely an accounting entry. In 1962, the building was sold and the corporation dissolved and in early 1963 the corporation’s assets — essentially cash — were distributed to the stockholders, including the trustee of the Florence Davis testamentary trust. The trustee allocated the cash so received to principal. Mrs. Lawrence, the income beneficiary, contends that for trust purposes the true income of the corporation during its life was the net income before the deduction for depreciation. She further contends, even if it was proper for the corporation to deduct depreciation during the life of the corporation, it became the duty of the trustee, on the corporation’s dissolution and liquidation, to allocate to income out of the proceeds of liquidation an amount equal to the accumulated depreciation by which, as she contends, the income had been annually understated.
The first inquiry must be as to the terms of the governing instrument. We are concerned here with the trust under the will of Florence Davis. There appears to be no provision of that will explicitly giving to the trustee any discretion as to how to treat depreciation.
Article tenth (g) gives the executors and trustees “ full power and authority in their sole discretion: “to allocate to income any receipt (including stock dividends) other than ordinary cash income, and to charge against principal and/or income any liability, cost, charge or expense; and against principal any premium paid for any security.”
This clause does not authorize the allocation to principal of receipts which should be allocated to income. The discretion contained therein to charge against principal and/or income ‘ ‘ any liability, cost, charge or expense ’ ’ does not, I think, refer to a mere accounting entry like depreciation, which does not represent a liability to pay anything to any one.
In this respect, the Florence Davis will is to be contrasted with the Benjamin Davis will, which gave to the trustees power to determine whether or not to create reserves out of income for depreciation (twelfth-H)' and to allocate to principal and/or income dividends representing the proceeds of liquidation (twelfth-L). It is also to be contrasted with the Florence Davis inter vivos trust which explicitly absolved the trustee from any obligation to make any provision for depreciation (EiGHTH-b) and gave him the power to determine how all receipts and disbursements should be credited, charged or apportioned as between income and principal (eighths). None of these clauses appears in the Florence Davis will.
*1069 I think the trustee was justified in permitting the corporation during its life to deduct depreciation from income in determining the net income for dividend purposes. (See Matter of City Bank Farmers Trust Co. [Clarke], 306 N. Y. 733 [1954].) True, the trustee and another Charlotte Lawrence nominee were two of the four directors of the corporation and all actions of the directors had to be unanimous. But by the same token it would have required the consent of all four directors to declare a dividend without regard to depreciation. In fact, the issue never came up. Depreciation had always been taken from the time of the creation of the corporation and the parties went right on doing so. There were tax advantages in continuing to take depreciation as a deduction. Although Charlotte Lawrence and her husband exercised the most minute scrutiny over the affairs of the corporation, every one acquiesced in this deduction.
On dissolution and liquidation of the corporation, however, the situation was different. The rule in New York — at least before the Principal and Income Act (Personal Property Law, former § 27-a et seq., eff. June 1, 1965) which is not applicable to these payments — appears to have been quite well settled that, for trust purposes, absent some provisions in the trust instrument to the contrary, depreciation was not a proper deduction in determining the income from realty held in a trust (Matter of Davies, 197 Misc. 827 [Surr. Ct., N. Y. County, 1950], affd. 277 App. Div. 1021 [1st Dept., 1950]; Matter of Herz, 7 Misc 2d 217 [Surr. Ct., Nassau County, 1957]; Matter of Adler, 164 Misc. 544 [Surr. Ct., N. Y. County, 1937]; Matter of Ottmann, 197 Misc. 645 [Surr. Ct., N. Y. County, 1949]).
Further, the rule was that if earnings were not paid out by a corporation currently, but were later paid either as an extraordinary dividend or as a liquidating dividend, so much of the extraordinary dividend or the proceeds of liquidation as represented income earned after the time of creation of the trust shall be allocated to the income beneficiary. This principle has been applied in the case of liquidating dividends involving a corporation one half of which was owned by certain family trusts (Matter of Schaefer, infra).
Thus in Matter of Schaefer (178 App. Div. 117 [1st Dept., 1917], affd. on opn. below 222 N. Y. 533 [1917]), the court stated the New York rule:
“Second. That extraordinary dividends representing accumulated profits, whether distributed in cash or in the form of stock, are to be apportioned between the corpus of the trust and the income, in the proportion in which the surplus thus *1070 distributed has been earned before or after the creation of the trust fund. This apportionment is made in order to preserve the integrity of the trust fund and at the same time conserve the rights of the life beneficiary. (Matter of Osborne, supra, 477.)
“Third. When a corporation is liquidated, its assets sold, and the proceeds distributed among its stockholders, an apportionment must be made between the capital of the trust fund and the income, and so much of the sum received by the trustee as represents profits accumulated since the creation of the trust must be attributed to income and paid to the life tenant (178 App. Div. 117,120-121.)
The rule is again restated in the Second Report of the Temporary Commission on Estates, Legislative Document (1963) No. 19, page 267, as follows: ‘1 Liquidating dividends in New York, except in the case of shares received under a divestiture order are allocated to principal or income, or apportioned between the two according to whether they are in whole or part a distribution of earnings accumulated after the creation of the trust.”
Matter of City Bank Farmers Trust Co. (Clarke) (306 N. Y. 733 [1954], supra) is not to the contrary. It did not involve the question of division of liquidating proceeds but merely the question of whether on the facts of that case the corporation was justified in creating a depreciation reserve during its lifetime and in accordance with its previous practice. It is well recognized that that is a different problem from the question of how the trustees shall allocate the funds when the problem of provision for depreciation no longer exists. (See Matter of Kaplan, 195 Misc 132,145 [Surr. Ct., Kangs County, 1949].)
Accordingly, I hold that out of the proceeds of the liquidation of the corporation there must be allocated to income of the Florence Davis testamentary trust an amount equal to the share (proportionate to the stock of the corporation held in that trust) of the depreciation which was deducted by the corporation from income in each year from the creation of that trust (provided and to the extent that without such deduction there would have been net income and not a loss in that year).
Certain applications of this rule to specific situations need to be stated:
(a) In 1961, the corporation suffered a net loss after depreciation of $12,791. The depreciation deduction was $29,516. If that depreciation had not been taken, the corporation’s net income for that year would have been $16,725. It is conceded that the claim with respect to depreciation insofar as relates *1071 to the year 1961 must be limited to this $16,725 (of which the income beneficiary of the Florence Davis testamentary trust is entitled to a proportionate share).
(b) As the corporation suffered an operating loss even before depreciation in 1962, it is conceded that the claim of the object ant income beneficiary must be eliminated for that year.
(c) The trustee suggests that the excess 1962 loss should also be made up out of undistributed profits from previous years (i.e., depreciation). I reject this contention.
Here, unlike the case of the general problem of depreciation, I cannot find that the New York rule was well settled before the Principal and Income Act. Bourne v. Bourne (240 N. Y. 172 [1925]), the closest case which has been called to my attention on this point, seems to me distinguishable because: (i) that case involved using a later profit to make up an earlier loss here, the reverse situation is presented (in that connection, I note that in the case at bar a stipulation of settlement between the parties approved by the court required all net profits after taxes to be declared as dividends quarterly; if that had been done with respect to depreciation, there could be no question of using past years’ profits to offset later years’ losses); (ii) Bourne involved an extraordinary situation, confiscation of a large part of the corporation’s assets by the Soviets, an extraordinary resulting deficit to capital, a publicly owned corporation, and a deliberate decision by the directors of that publicly owned corporation who had no relation to the trusts, to allocate earnings to make up for the previous extraordinary loss.
Believing that the rule of law on this point was not well settled before the adoption of the Principal and Income Act, I have decided, by way of analogy, to apply the rule of annual rest dates set forth in that act. That act provides (Estates, Powers and Trusts Law, § 11-2.1, subd. [g], formerly Personal Property Law, § 27-g): “ (g) Business operations. If a trustee uses any part of the principal in the continuance of a business of which the person who created or declared the trust was a sole proprietor or a partner, the net profits of the business, computed in accordance with generally accepted accounting principles for a comparable business, are income. If a loss results in any fiscal or calendar year, the loss falls on principal and shall not be carried into any other fiscal or calendar year for purposes of calculating net income. ’ ’
The Temporary Commission on Estates in its Third Report (N. Y. Legis. Doc., 1964, No. 19, p. 440) thus comments on this provision: ‘ ‘ The provision in both the original and revised acts that losses incurred in one year are not to be carried into *1072 any other year is fair and reasonable. If the business were incorporated, the only detriment to the income beneficiary in a year of losses might be a suspension of dividends. The provision in question would have the same effect in the case of an unincorporated business. The use of the fiscal or calendar year as a kind of rest date at which the rights of the parties become readjusted is quite customary.”
(d) The trustee points out that in 1956 and 1957 it was not the deduction for depreciation but the terms of a stipulation (directing the application of available cash to the redemption of debentures) that prevented the distribution of dividends by the corporation, and that therefore the income beneficiary should not have the benefit of the depreciation in those years. I disagree. It is not the fact of the availability for dividend declaration in 1956 and 1957 that determines the income beneficiary’s rights but rather whether and the extent to which the amount received by the trustee on liquidation represents accumulated profits (Matter of Schaefer, supra). By definition we are concerned here with profits which for one reason or another were not declared but have been accumulated.
(e) The trustee contends that the extraordinary dividends declared in 1958 would have to be deducted from any re-allocation to income account because that dividend was in reality a distribution from capital. Again, I disagree. The extraordinary dividend paid in 1958 was paid out of a surplus created by revaluation of the corporation’s profits. Whatever may have been its purposes, that dividend was not intended to be an offset to any depreciation deduction. It was an amount that the directors thought they should declare, and the trustee (who after all had the power to invade principal) thought he should distribute to the income beneficiaries. The exercise of these corporate and trust powers was in no way related to the depreciation deducted in that or the previous years nor was it intended as compensation for it.
II. THE 1956 DC-AO CONVERSION AND THE WATER TANK
In 1956, as required by a lease with the United States Government as tenant, the corporation’s building was rewired from direct current to alternating current, at a cost of $37,254. Also, a new water tank was installed at a cost of $4,890. Both items were charged entirely to income in that year. No dividends were declared in that year. The income beneficiary now says that the cost of the wiring and the water tank should have been capitalized and either not deducted from income or amortized over the life of the improvement, so that the unamortized por *1073 tion on the sale of the building would be a charge to principal. The income beneficiary objects to the accounts insofar as they fail to make up to the income beneficiary these extraordinary costs.
Were it not for the discretionary power vested in the trustees by the trust instrument, I would agree with the income beneficiary (Matter of Davies, 197 Misc. 827, 834 — 835 [Surr. Ct., N. Y. County, 1950], affd. 277 App. Div. 1021 [1st Dept., 1950]; Matter of Adler, 164 Misc. 544, 557 [Surr. Ct., N. Y. County, [1937]).
As previously stated, article tenth (g) of the Florence Davis will gives the executors and trustees ‘ ‘ full power and authority in their sole discretion * * * To allocate to income any receipt (including stock dividends) other than ordinary cash income, and to charge against principal and/or income any liability, cost, charge or expense; and against principal any premium paid for any security.”
Here, the trustee, at least by its accounting, if not before then, has charged against income this ‘ ‘ liability, cost, charge or expense ’ ’. The trustee’s discretion exercised under this provision of the will, at least if exercised reasonably and in good faith, is not to be interfered with by the court. By this clause the testatrix (or her lawyers) hoped to avoid litigation about this kind of issue.
I cannot say that the trustee’s discretion was here exercised unreasonably or in bad faith. At least in 1956, all parties acquiesced in charging these items to income. There was an affirmative income tax advantage in doing so. The Federal income tax authorities treated this as a proper income deduction. The trustee, himself an accountant, testified that this was proper accounting treatment; and nobody testified that it was not.
As to the trustee’s decision not to allocate any portion of the proceeds of liquidation to income in respect to this item, I note that the Principal and Income Act (which is not applicable to these payments though it will be applicable in the future) provides that any cash or other assets distributed to shareholders in liquidation are principal, with certain exceptions (EPTL 11-2.1, subd. [e], par. [6], formerly Personal Property Law, § 27-e, subd. 6). The fact that the Legislature adopted this rule to govern future distributions in the absence of provision in the will would seem to preclude any argument that the trustee was unreasonable in following such a rule. Furthermore, in 1958, as previously stated, the property was revalued and out of the surplus thus created an extraordinary dividend was declared in recognition of the low income in 1956 *1074 and 1957 and perhaps other years. The trustees paid this entire extraordinary dividend to the income beneficiary.
That the court might have reached a different result if the matter had not been left to the trustee’s discretion does not justify the court in overruling the trustee’s exercise of his discretion.
The objections to these items are in the Florence Davis testamentary trust accounting. The objections as to these items are dismissed.
III. ACCRUED INTEREST, INCOME TAX REFUND AND INSURANCE PREMIUM REFUND RECEIVED IN 1963.
In February, March and April, 1963, the trustee of the Florence Davis testamentary trust apparently received amounts totaling $3,487.07 as the trust’s share of accrued interest on a mortgage held by the corporation, and as refunds of income tax and unearned insurance premiums. The trustee treated these items as principal. I hold that they should be allocated to income if and to the extent that in the year in which received, the trust, with these items treated as income, had a net income rather than a net loss.
These items were either themselves income (the accrued interest item) or refunds of items that had been charged to income. They are thus in essence income. While the trustee’s contention that such items, when received as proceeds of corporate liquidation, are principal, may be correct under the Principal and Income Act, that act was not yet in effect when these amounts were received. And under the settled law before that Act, these amounts belonged to income. (See authorities under “ I ” above.)
Nor are these items to be allocated to income for the year 1962 on an accrual basis. (The corporation had a net loss in that year.) While the corporation was on an accrual basis, the trust was on a cash basis and the items thus received were income to the trust in the year in which received — 1963. If then, in the year in which received, the trust had net income, these items must be allocated to the income beneficiary to the extent that with these items there was net income. In so doing, the principle of annual rest dates — computing income on an annual basis without regard to losses in any other year — referred to in “ I (c) ” above would also apply here.
IV. $10.85 COMMISSION ON BENJAMIN DAVIS TESTAMENTARY TRUST
The income beneficiary objects to a $10.85 commission item with respect to principal received by the trustee in the Benjamin Davis trust. Although the amount is negligible, the income beneficiary is apparently afraid that this can become some kind *1075 of a precedent. While the court is tempted to dismiss the objection as de minimis the point is clear enough so that it is probably just as easy to decide it.
The 1956 stipulation under which the trustee was appointed provides in paragraph 20 of the new trustee of the Benjamin Davis trust ‘ ‘ shall waive his right to receiving commissions on the principal of the said trust.” The trustee argues that this refers only to principal received from the predecessor trustee. The stipulation is not so limited. The objection is sustained.
V. TRANSACTIONS WITH RESPECT TO THE EXECUTORS
After the final accounting of the executors, by decree of this court dated December 17, 1967 the executors of the Florence Davis trust were directed to retain the sum of $7,000 to be used for payment of New York estate taxes, penalties and interest. They apparently chose not to make an advance payment of this amount and were charged with interest. It was their contention and is the trustee’s contention that the failure to make the payment was a tactical move in an effort to improve the estate’s bargaining position with the tax authorities. In addition, it appears that the sum of $7,000 was not used solely for estate taxes. Furthermore, in October 1962, the trustee of the Florence Davis testamentary trust advanced to the executors $800 (one half of $1,600) needed for income taxes, attorneys’ fees, etc. Objection is made to this advance. The short answer to most of this would seem to be that if the executors of the Florence Davis estate acted improperly in connection with these funds they can be surcharged by the Florence Davis testamentary trustee who will receive the benefit of it. If they did not act improperly, then the money was needed for the Florence Davis estate. In any event, the executors will have to account for this money. There seems to be no point in trying out the issue of the propriety of the executor’s conduct in this proceeding involving the trustee’s account.
There are certain qualifications upon this. It appears that the $800 advanced by the Florence Davis trustee (half of a $1,600 total, the other half being advanced by John Davis, the income beneficiary’s brother) was needed in part to meet tax obligations and perhaps attorneys’ fees with respect to the Benjamin Davis estate. The beneficial interest of the parties in the two estates is almost identical. Nevertheless, moneys used to meet the Benjamin Davis estate’s obligations should be charged to the Benjamin Davis testamentary trust, and a proportionate share of attorneys’ fees should be charged to that trust, and to that extent the Florence Davis testamentary trust should be credited.
*1076 Except as indicated the objections with respect to these items are dismissed.
"VT. OBJEOTANT’S FORMER ATTORNEYS’ COUNSEL, FEES
There is a suggestion in objectant’s brief that a modest allowance be made for the services of her former attorneys in connection with their services in the litigations, etc., relating to the sale of 250 Hudson Street. There is simply no such application before the court. Accordingly, the objections relating to this item are dismissed.
VII. COUNSEL FEES
Objections have been made to the amount of counsel fees. The parties have entered into a stipulation reserving the question of the right of the trustee’s counsel to fees and the amount thereof on the present proceeding for later determination by the court. The court deems it better to consider the entire amount of the trustee’s counsel fees at one time. Accordingly, the court will reserve decision as to the objections relating to the trustee’s counsel fees until the parties submit their papers with respect to the counsel fees in this proceeding.
VIII. REQUEST FOR INVASION OF PRINCIPAL
The income beneficiary asks the court, in the exercise of its discretion, to order the trustee to invade principal for the income beneficiary’s benefit to the extent that the court does not fully sustain the income beneficiary’s contentions with respect to the proper allocation of funds between income and principal and with respect to claimed surcharges.
But this request ignores the fact that it is not the court which has this discretion; under the will, it is the trustee.who has this discretion. The court may only correct an abuse of discretion by the trustee. No such abuse of discretion has been demonstrated.
The usual problem in this area is stated to be: “ The issue presented is the frequent construction question of whether the trust provisions constitute an absolute gift of support, in which case other resources of the beneficiary are irrelevant [citing cases] or whether the trust is a gift of maintenance only ‘ in case of need ’, in which event the other resources of the beneficiary must be taken into account [case cited].” (Matter of Stern, 34 Misc 2d 391, 392 [Surr. Ct., Nassau County, 1962].)
Here, the Florence Davis will provides:
“seventh: Notwithstanding any thing herein contained, I authorize such of my trustees as are authorized to act with respect to this Paragraph ‘ seventh ’ of my Will, to pay, transfer *1077 and deliver to, or apply for the benefit of my daughter, any portion or portions of the trust so set apart for her, for any purpose or purposes which in the judgment and uncontrolled discretion of said trustees will tend to promote or be conducive to the health, support, happiness or general welfare of my daughter, or her issue. It is my intention by this Paragraph ‘ seventh ’ of my Will, to confer upon said trustees the broadest possible latitude with respect to such payments or applications of principal, and regardless of the fact that my daughter may have other resources. The discretion exercised by said trustees with respect to this paragraph ‘ seventh ’ of my Will shall be final and conclusive.”
It is difficult to read this provision as an absolute gift of an amount determinable by some objective standard. The trustees are to invade 61 for any purpose or purposes which in the judgment and uncontrolled discretion of said trustees will tend to promote or be conducive to the health, support, happiness or general welfare of my daughter, or her issue.” The trustees’ discretion to invade is very broad indeed; but it is a discretion which seems to be closely tied to the trustees’ subjective judgment.
The Benjamin Davis trust contains a more restrictive and at the same'time more subjective provision (par. seventh) : “ Further, my trustees are hereby authorized and empowered, in their absolute and uncontrolled discretion, to pay to or apply for the use and benefit of, a child aforesaid, absolutely, from time to time, in addition to the income such child may be receiving, such sums out of and from the principal of the part hereinbefore entrusted for such child’s benefit, as they may deem proper or advisable, provided, however, that the aggregate of all such payments or applications of principal out of such part shall not exceed two thousand five hundred ($2,500.00) dollars in any one year.” Again, it seems to me that the only objective standard is the maximum limitation of $2,500 per year; there is nothing which can be used as the basis for an objective standard with which to set a minimum.
In these circumstances, the trustee, being asked to exercise his discretion, requested certain facts including particularly facts as to the income beneficiary’s resources. This request was not complied with. Although the trustee was not required to consider the beneficiary’s other income, I am not prepared to say that he was forbidden to consider it or the beneficiary’s other financial resources in deciding what, if any payment would “ tend to promote or be conducive to the health, support, happiness or general welfare ” of the income beneficiary. *1078 (Matter of MoNeel, 54 Misc 2d 243, 246 [Sup. Ct., Nassau County, 1967].)
The income beneficiary objects that the trustee, being an accountant, took too strict an accounting view of the matter. Perhaps a lawyer, or a court if it had this discretion, might be more liberal. But the trustee is who he is. The fact that he was an accountant was known at the time that he was chosen and it seems reasonable to suppose that it was a factor that entered into the choice, bearing in mind that the income beneficiary’s husband is himself an accountant and was apparently a friend or business associate of the trustee. It is not surprising that a trustee who is a member of any profession may be influenced by his particular discipline. And after all principal and income are accounting concepts. But it has not been shown that this trustee was not aware of the fact that he could pay principal to the income beneficiary.
In any event it would seem that a trustee exercising this discretion would have to have ‘1 sufficient knowledge of all the facts to enable it to exercise its own judgment ”. (Matter of Clark, 280 N. Y. 155,163 [1939].) And a fortiori the court would have to know such facts in order to determine whether the trustee had abused his discretion. Here, the record is barren of any facts on which the court can base any finding of abuse of discretion. Accordingly, the application to direct the trustee to invade principal is denied.
IX. NONMONETARY RELIEF. APPLICATION TO REMOVE TRUSTEE
The income beneficiary objects to a large number of transactions and actions of the trustee as to which apparently the income beneficiary does not seek any monetary relief but merely seeks to use them as a basis to have the trustee removed.
(a) Among such items are objections to terms of sale of the 250 Hudson Street realty, the handling of the 1965 mortgage default, the terms of the 1966 refinancing, the basis of a tax payment, and the investment in securities which had a lower yield than the income beneficiary wished.
As to many of these, the objection appears to be that the trustee should have made a more favorable deal. No doubt, when any contract is made, it is possible to imagine terms that Avould be more favorable to one of the parties. But there is no showing here that more favorable terms were available or that the trustee acted otherwise than in the exercise of honest reasonable business judgment.
There is also complaint about alleged delay in the liquidation of the corporation, about failure to declare corporate dividends *1079 promptly, about charging a $2,500 appraisal fee in 1962 to corporate income rather than to capital, a rather inconsistent complaint as to the corporation charging so-called bonus notes to income rather than to capital, criticism of the handling of a dispute with William A. White & Co. with respect to a claim for brokerage, criticism of the trustees ’ taking small commissions at one date rather than another. As to all of these, no claim is made that the income beneficiary was in fact hurt, or at least if she was, the damage is described by her as “ negligible ”. I am unable to say that the trustees acted otherwise than in the exercise of honest and reasonable judgment in relation to these items.
There is, also, criticism of the allocation of certain stock dividends in 1964 to principal rather than to income. While the trustees had discretion to allocate such dividends to income under the terms of the wills, I am unable to say that the trustees’ allocation of those dividends to principal was either unreasonable or in bad faith in view of the provisions of the then section 17-a of the Personal Property Law stating the general rule that stock dividends are to be allocated to principal, and the complete absence of any facts in the record as to why the trustee should have done something different here.
(b) One criticism of the trustee is, I think, well merited. On a number of occasions, the trustee waited some months before clipping and collecting interest coupons, with the result that the beneficiary did not receive that income during the quarter in which she was entitled to them, even though that quarter ended two or three" months after the interest coupons were due. The damage to the income beneficiary, measured in interest on this interest, was apparently negligible. But it is the trustee’s duty to collect interest promptly, not to wait for four, five or six months before doing so.
(c) Based on all of the foregoing, the income beneficiary asks that the trustee be removed because of his demonstrated hostility to the income beneficiary. I deny this applicaiton.
The trustee denies that there is hostility. The income beneficiary has not testified.
The court is, of course, aware that this litigation and the two prior litigations between the trustee and the income beneficiary cannot have endeared them to each other.
As to the previous litigations, one of them was brought by the income beneficiary and was apparently unsuccessful. Another, the cosignatory litigation, was less important and essentially unsuccessful but primarily because premature.
The various other matters to which the income beneficiary points as demonstrating hostility which should lead to removal *1080 do not persuade me that the trustee should be removed in the present circumstances.
It is not clear to what extent the tension between the trustee and the income beneficiary may be due to a difference of opinion as to the point at which the trustee should exercise his own judgment independent of and perhaps contrary to the income beneficiary. The income beneficiary having, in essence, nominated the trustee, may feel that he should be more attentive to her wishes. Without derogating in the slightest from the recognition of the duty of a trustee to be attentive to the wishes of his income beneficiary, the trustee remains of course a trustee and not an agent.
The trustee originally named in the Florence Davis will was the income beneficiary’s brother. He resigned in the course of litigation and the present trustee was chosen with the income beneficiary’s consent and apparently on her nomination. Now, the income beneficiary’s posttrial brief, page 172, states: “It is the desire and intention of Mrs. Lawrence, in that event, to request the appointment of either the Bank of New York or United States Trust Company of New York, subject only to a prior discussion and understanding with the trustee to be so designated. ’ ’
These circumstances emphasize the danger that too easy . removal of trustees may erode their independence.
The application to remove the trustee is denied.
RULINGS ON OBJECTIONS
Objection 1 to the first account in the Florence H. Davis estate, objection 9 to the first supplemental account in that estate, and objections 1 and 3 to the first account in the Benjamin B. Davis estate are marked withdrawn. Objection 2 to the first account in the Florence H. Davis estate, objection 1 to the first supplemental account in that estate, and objections 13 and 14 to the second supplemental account in that estate are sustained to the limited extent indicated in this opinion and otherwise are dismissed. Objection 3 to the first supplemental account in the Florence H. Davis estate and objection 4 to the first supplemental account in that estate are sustained, to the extent indicated in this opinion, with respect to the failure of the trustee to allocate to trust income a portion of the proceeds of'the liquidation of the corporation equal to the share of depreciation deducted from trust income. Objections 2 and 3 to the first supplemental account in the Florence H. Davis estate, objection 16 to the second supplemental account in that estate, and objection 9 to the second supplemental account in the Benjamin B. *1081 Davis estate, pertaining to attorneys’ fees, insofar as they pertain to the fees of attorneys for fiduciaries, are reserved for later determination. Objection 9 to the second supplemental account in the Florence H. Davis estate is sustained. Objections 4 and 5 to the first account in the Benjamin B. Davis estate do not require separate rulings. Objection 7 to the second supplemental account in the Benjamin B. Davis estate is sustained. All other objections are dismissed.
FURTHER PROCEDURE
With respect to the application for counsel fees, the trustee’s counsel may submit supporting papers by November 15,1967 and the objectant may reply thereto by November 30, 1967.
The court believes that it has disposed of all objections. But the objections are voluminous and detailed and if any party believes that the court has overlooked any issue or objection, he may call it to the court’s attention at the same time as the submission of papers as to counsel fees.
After the court has determined attorneys’ fees and any additional objections which may be called to the court’s attention, the parties will have an opportunity to submit a decree giving effect to the court’s rulings.